Filed
D.C. Superior Court
08/11/2021 19:15PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

|  |  |  |
|---|---|---|
| **CHRISTOPHER GENSCH**<br>**99 Blair Alley, S.W., Apt. 771**<br>**Washington, D.C. 20024** | ) ) ) ) | |
| *Plaintiff,* | ) ) | **Case No.**  2021 CA 002809 B |
| v. | ) ) | **Jury Trial Demand** |
| **ASTHMA AND ALLERGY**<br>**FOUNDATION OF AMERICA**<br>**1235 South Clark Street, Suite 305**<br>**Arlington, VA 22202** | ) ) ) ) ) | |
| *Defendant.* | ) ) | |

### COMPLAINT

Plaintiff Christopher Gensch (hereinafter "Plaintiff," "Plaintiff Gensch," or "Mr. Gensch") by and through his attorneys, hereby files this Complaint against the Defendant Asthma and Allergy Foundation of America (hereinafter "Defendant," "Defendant AAFA," or "AAFA"), and for his Complaint states as follows.

Plaintiff Gensch seeks relief pursuant to the District of Columbia Human Rights Act, ("DCHRA") § 2-1401 *et seq.*, and seeks damages, including but not limited to declaratory, injunctive and other equitable relief, compensatory and punitive damages, litigation expenses and reasonable attorneys' fees, based on Defendant's discriminatory, harassing, retaliatory, and otherwise unlawful actions against Plaintiff Gensch.

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this Complaint pursuant to D.C. Code § 11-921.

1



2.     Venue is proper in this Court in that the events and omissions giving rise to Plaintiff's claims occurred here in the District of Columbia.

**PARTIES**

3.     Plaintiff Gensch is a resident of Washington, D.C.

4.     Defendant AAFA is a not-for-profit organization founded as a support organization for people with asthma and allergies and an employer as defined by the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.*

**FACTS**

5.     Mr. Gensch is a digital marketing professional. On April 30, 2020, he began employment with AAFA as a Digital Marketing Manager. He was provided limited training when he commenced employment, and no training on personnel related matters such as completing timesheets. Mr. Gensch worked remotely from his home in Washington, D.C. and never went to AAFA's physical office in Virginia. He reported to Melanie Carver, the Chief Mission Officer. Mr. Gensch has a disability which requires that he take frequent bathroom breaks when the disability is active.

6.     Prior to his employment at AAFA, several employees at the organization reported instances of mistreatment by AAFA managers and employees.

7.     On May 8, 2020, Kenneth Mendez, Chief Executive Officer and President, held a staff Zoom meeting and acknowledged that the AAFA had tolerated a toxic work environment and expressed his desire that the new management team would move the organization in a more positive direction.

8.     Mr. Gensch was responsible to performing digital marketing to reach donors and he performed the same duties as a colleague, Kathy Przywara, who had worked at the organization for fifteen years and was a close personal friend of Ms. Carver.

9.     On September 17, 2020, Mr. Gensch received an email from Ms. Carver which advised him that he had not filled out his timesheet correctly. Mr. Gensch apologized for any errors and noted that he had not been trained on how to enter correct billing on his timesheet and that Ms. Carter had previously told him that training on timesheets would be provided, but that training was delayed due to work that needed to be completed on the Disparities Report. When Mr. Gensch asked when the training would be scheduled, Ms. Carver responded that Mr. Gensch had received enough training already.

10.     For the first five months of his employment, Mr. Gensch had weekly one-on-one meetings with Ms. Carver and enjoyed a cordial professional working relationship with her.

11.     In October 2020, Mr. Gensch's mother suffered a heart attack. Mr. Gensch informed Ms. Carver that he would need to take leave to assist in the care of his mother and on occasion he may have to jump off a call to address her health care issues or to speak to a doctor. Ms. Carver initially offered Mr. Gensch support and assured him that he would be kept apprised of issues at work. After Mr. Gensch had a few instances where he had to address issues with the care of his mother, Ms. Przywara, the coworker and a personal friend of Ms. Carver, began bullying Mr. Gensch by interrupting his work and claiming that Mr. Gensch was not performing certain tasks. She also began copying Ms. Carver on emails between her and Mr. Gensch in an attempt to make Mr. Gensch appear as if he was not performing his job. After Ms. Przywara began bullying Mr. Gensch, Ms. Carver began to distance herself from him by delaying her responses to

his emails and Microsoft Teams messages, as well as canceling one-on-one meetings, and rarely if at all attending social media marketing meetings.

12.     On November 13, 2020, Celeste Santifer, the Vice President of Operations, sent Mr. Gensch an email advising him that Human Resources would be speaking to him the following week. Mr. Gensch then contacted Ms. Santifer to inquire what the meeting is about, and she responded that Human Resources would be discussing it with Mr. Gensch the following week. Mr. Gensch also sent a text message to his supervisor, Ms. Carver, asking what the meeting was about and she responded dishonestly that, "Celeste is meeting with folks to discuss operational stuff and HR/benefits open enrollment."

13.     On November 17, 2020, Mr. Gensch attended the meeting via Zoom with Danielle Alexa, Human Resources representative, and Ms. Santifer. During this meeting, Ms. Santifer stated that the reason for the meeting was to address operations. Prior to his meeting, no one told Mr. Gensch that any sort of complaint had been made against him. Ms. Santifer read from a list of items that Mr. Gensch needed to do, such as joining virtual meetings with his camera on and notifying his supervisor when stepping away, even though he was already doing those things. There was no policy at AAFA at the time that required employees to turn on their cameras during meetings. Before this meeting, and after this meeting AAFA employees did not always turn on their cameras during meetings.

14.     In December 2020, Mr. Gensch's supervisor, Ms. Carver, stated during a meeting that she would not be turning on her camera because she was "in her pajamas" and on various occasions did not arrive to meetings on time nor did she make sure her camera was on and ready. Additionally, following this meeting, other employees would continuously message during meetings or not turn on their cameras.

4

15.     On March 1, 2021, Ms. Carver emailed Mr. Gensch and copied Ms. Santifer, "Your recent timesheet entries were flawless. Thank you for billing your time for our health equity work to the Research-Sanofi code (I know it's confusing), all of your policy/advocacy time appropriately, and for adding the notes for Certification Program. Just wanted to send you kudos and thank you for your attention to detail to ensure we are using our funding appropriately."

16.     On March 9, 2021, in a Microsoft Teams meeting, Ms. Przywara complimented the work Mr. Gensch had done on a recall assignment and thanked him for getting it done. The type of assignment was not one Mr. Gensch had done before. Three or four hours after the meeting on Microsoft Teams, Ms. Przywara sent an email to Mr. Gensch and Ms. Carver stating that Mr. Gensch had not completed his work on an assignment. Mr. Gensch responded that he was completing the work and was continuing to do so. He also disclosed that he had a disability at the time and that the circumstances of his condition may contribute to tasks sometimes taking a longer time to complete. Mr. Gensch had not desired to disclose his disability, but Ms. Przywara's continued harassment and bullying led him to disclose his disability because he wanted to be truthful. Ms. Przywara then forwarded Mr. Gensch's email to Ms. Santifer. That day, Ms. Santifer and Mr. Gensch spoke on the phone, and Ms. Santifer said that she was concerned because he had disclosed a medical condition.

17.     On March 9, 2021, Mr. Gensch filed a complaint in Human Resources against Ms. Przywara for workplace harassment, bullying, including micromanaging; setting unreasonable time expectations such as sending him an assignment at 11:35 a.m. and expecting it to be done by 11:55 a.m.; yelling at him; and accusing him of not doing his work.

18.     On March 11, 2021, Mr. Gensch and Ms. Przywara attended conflict resolution (which Ms. Santifer called an "active listening exercise") with Ms. Santifer. During this meeting,

5

Ms. Santifer stated that Ms. Przywara was not communicating properly and had used an inappropriate tone in the March 9, 2021 email. After Mr. Gensch filed a complaint with Human Resources against Ms. Przywara, Ms. Carver cancelled his performance review which was scheduled for March 17, 2021. The performance evaluation was never rescheduled and, though other employees received their scheduled performance reviews, Mr. Gensch never received a performance review at AAFA.

19.     On March 10, 2021, Human Resources asked Mr. Gensch to make an ADA request for reasonable accommodation for his IBS. Mr. Gensch complied, and Human Resources sent Mr. Gensch paperwork for his doctor to fill out, which he did and delivered by the deadlines that HR requested. Mr. Gensch's doctor asked for, "unlimited bathroom breaks, 15-30 minutes, without question."

20.     On March 17, 2021, Mr. Gensch submitted this paperwork to Human Resources.

21.     On March 18, 2021, Ms. Santifer and Danielle Alexa demanded that Mr. Gensch have his doctor rewrite the request stating it was "unacceptable" and "problematic" because "unlimited" and "without question" are not reasonable accommodations. Human Resources interpreted this language to mean that Mr. Gensch would be able to work for five minutes, take a thirty-minute break, work five more minutes, and then take another thirty-minute break. That same day, Mr. Gensch met with Ms. Alexa and Ms. Santifer about the accommodation. Mr. Gensch then returned the revised ADA paperwork on time.

22.     On March 26, 2021, Mr. Gensch contacted Ms. Santifer and diplomatically said that he was grateful for the guidance Ms. Carver had already provided him but would appreciate weekly meetings with her. Ms. Santifer suggested weekly, fifteen-minute meetings on Friday. Mr. Gensch asked Ms. Santifer about this instead of Ms. Carver because Ms. Carver had told him

previously that Ms. Santifer controls her schedule and to reach out to her for scheduling purposes. Ms. Santifer stated she liked the idea of having one-on-one meetings and would follow up with Mr. Gensch with a meeting about scheduling them. This meeting was never scheduled, nor did she contact Mr. Gensch regarding any follow-up from their discussion.

23. Near the end of March 2021, Mr. Gensch was given a deluge of deadlines, which he believes was an attempt to set him up for failure. Before this time, Mr. Gensch's work was not given set deadlines. Mr. Gensch called Ms. Carver multiple times to communicate that the workload was not reasonable and to try to meet with her to discuss, but she never answered his calls nor returned them.

24. On March 30, 2021, Ms. Alexa and Ms. Santifer met to go over the revised documents. In reviewing the documents, Ms. Santifer made it a point to clarify that they were just going over the ADA documents and that her remarks were not suggesting there were any problems with Mr. Gensch's actual work performance nor to insinuate that he was not doing his work or not working eight hours a day. Ms. Santifer's comments seem to be scripted to give the appearance that no action was being taken against Mr. Gensch because of his disability and that AAFA was accommodating his disability. After this meeting, Ms. Przywara's harassment intensified, and Ms. Carver began being rude and disrespectful to Mr. Gensch on a daily basis and claiming she had not approved social media content when she previously had and then blaming mistakes on Mr. Gensch.

25. On April 9, 2021, near 2:00 p.m., Mr. Gensch received an email from Ms. Santifer that CONTOUR, AAFA's IT contractor, would be doing work to update his computer. This was false. COUNTOUR was removing Mr. Gensch's access. At 4:30 p.m., Ms. Alexa and Ms. Santifer called Mr. Gensch and terminated his employment. Ms. Alexa stated that Mr. Gensch had "missed

opportunities that have resulted in loss of clients and missed deadlines." This explanation is false

because Mr. Gensch never lost a client at AAFA — his job duties did not even include working

with clients. Mr. Gensch does not recall ever missing a deadline, nor did he have deadlines until

the latter part of March 2021. The separation letter from Ms. Santifer includes the false stated

reason for Mr. Gensch's firing as his "inability to effectively perform the duties of a Digital

Marketing Manager."

**COUNT I**
**Violation of District of Columbia Human Rights Act ("DCHRA")**
**D.C. Code § 2-1401 *et seq.***
**Family Responsibilities and Disability Discrimination**

26.     Plaintiff realleges and incorporates by reference the above paragraphs as if fully

stated herein.

27.     At all pertinent times, Defendant is an employer under the District of Columbia

Human Rights Act, D.C. Code § 2-1401 *et seq.*

28.     At all pertinent times, Plaintiff was an employee entitled to protection under the

District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.*

29.     The District of Columbia Human Rights Act prohibits an employer from

discriminating against an employee based on the employee's family responsibilities and requires

that employers reasonably accommodate employees with disabilities and prohibits discrimination

based on disability, among other protected classes.

30.     Defendant, in violation of the District of Columbia Human Rights Act, knowingly

and intentionally engaged in unlawful discrimination against Plaintiff based on family

responsibilities and his disability. Mr. Gensch notified his employer that he would need to take

unscheduled leave beginning in October 2020 to assist in the care of his mother who suffered a

8

heart attack. After a few occasions where he had to take leave, Defendant discriminated against Plaintiff Gensch by accusing him of not performing his job and cancelling one on one meetings, reprimanding him and then terminating his employment. Plaintiff Gensch has also been diagnosed with a disability which he disclosed to his employer and requested an accommodation.  Mr. Gensch's disability required more frequent bathroom breaks which occasionally resulted in him taking additional time to complete projects. Although AAFA agreed to the requested accommodation, it failed to accommodate his disability and took adverse actions against him because of the accommodation, including cancellation of one on one meetings with his supervisor, a reprimand for turning on his camera, accusations of not completing a project in a timely manner, denial of a performance review, issuance of a work assignment at 11:35 a.m. with an 11:55 a.m. deadline and termination of employment. He later made a complaint that he was being subjected to workplace harassment by Ms. Przywara and was subsequently terminated. AAFA terminated Mr. Gensch within two weeks of Mr. Gensch requesting a reasonable accommodation, and under false pretenses, claiming that he was being terminated for causing the loss of clients and missing deadlines, when Mr. Gensch did not interact with clients and did not miss any deadlines. In terminating his employment, AAFA treated him differently than other employees similarly situated who did not take leave for family responsibilities nor request a reasonable accommodation for a disability, and in doing so, did not follow its own personnel policies, and provided a false and shifting explanation for his termination.

31.    As a direct and proximate cause of the Defendant's actions, Plaintiff Gensch has suffered emotional distress and pain and suffering.

32.    Defendant had no legitimate business reason for any such acts.

9

33.    Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices that are not yet fully known.

**COUNT II**
**Violation of District of Columbia Human Rights Act ("DCHRA")**
**D.C. Code § 2-1401 *et seq.***
**Retaliation**

34.    Plaintiff realleges and incorporates by reference the above paragraphs as if fully stated herein.

35.    At all pertinent times, Defendant is an employer under the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.*

36.    At all pertinent times, Plaintiff was an employee entitled to protection under the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.*

37.    The District of Columbia Human Rights Act prohibits an employer from taking adverse action against an employee because the employee engages in protected activity and reports acts of discrimination and/or opposes acts of discrimination.

38.    Defendant, in violation of the District of Columbia Human Rights Act, knowingly and intentionally engaged in unlawful retaliation against Plaintiff after he requested leave for family responsibilities, and requested a reasonable accommodation for a medical condition and after he made a complaint that he was being subjected to workplace harassment by Ms. Przywara. After his protected activities, AAFA retaliated against him by failing to issue him a performance appraisal and giving him work assignments with unreasonable deadlines and terminating his employment. AAFA terminated Mr. Gensch within two weeks of Mr. Gensch requesting a reasonable accommodation, and under false pretenses, claiming that he was being terminated for

10

causing the loss of clients and missing deadlines, when Mr. Gensch did not interact with clients and did not miss any deadlines.

39.     As a direct and proximate cause of the Defendant's actions, Plaintiff Gensch has suffered emotional distress and pain and suffering.

40.     Defendant had no legitimate business reason for any such acts.

41.     Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other retaliatory practices that are not yet fully known.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Gensch prays as follows:

A.     That the Court issue an Order declaring Defendant violated the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.* and declaring Plaintiff eligible to receive equitable and other relief;

B.     Enter judgment against Defendant;

C.     Issue a permanent injunction prohibiting Defendant from engaging in any further acts of discrimination, retaliation and interference with prospective business and contractual relationships;

D.     Enter judgment in favor of Plaintiff against Defendant for all equitable monetary damages available under the law including but not limited to back pay and front pay in amounts to be determined at trial;

E.     Order Defendant to refrain from any action against Plaintiff, or any other person, for participating in or supporting this case in any manner;

F.      Order Defendant, individually and collectively, to pay compensatory and punitive

damages in an amount no less than five million dollars ($5,000,000);

G.      Order Defendant to pay Plaintiff's reasonable attorneys' fees, expert fees and costs;

and

H.      Order Defendant to pay pre-judgment and post-judgment interest as provided by

law.

Date: August 11, 2021                           Respectfully submitted,

                                                _____*/s/ David A. Branch*_____
                                                David A. Branch, D.C. Bar No. 438764
                                                Law Office of David A. Branch &
                                                Associates, PLLC
                                                1828 L Street, N.W., Suite 820
                                                Washington, D.C. 20036
                                                Phone: (202) 785-2805
                                                Fax: (202) 785-0289
                                                Email: davidbranch@dbranchlaw.com

### **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all claims against Defendant.

12



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Christopher Gensch
_____
                                    Plaintiff

                  vs.

Asthma and Allergy Foundation of America      Case Number    2021 CA 002809 B
_____
                                    Defendant

**SUMMONS**

To the above named Defendant:

     You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

     You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

David A. Branch
_____                              Clerk of the Court
Name of Plaintiff's Attorney

Law Office of David A. Branch & Associates, PLLC        By _____
_____                                        Deputy Clerk
Address
1828 L Street, N.W., Suite 820, Washington, D.C. 20036

(202) 785-2805
_____                              Date _____08/13/2021_____
Telephone
如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주세요      ?ﺎﻣﺣﺭ? ?ﺩﺭﻳ? ﻝﻣﻣﻣﻳ? (202) 879-4828      ?ﺭﻩﺄﻻ?

     IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

     If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____

_____ Demandante
contra

Número de Caso: _____

_____ Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

_____      Por: _____
Dirección                                                                          Subsecretario

_____

_____      Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

만약 번역을 원하시면 (202) 879-4828 로 전화주십시요.          የአማርኛ  ትርጉም  ለማግኘት (202) 879-4828  ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Christopher Gensch _____   Case Number: __2021 CA 002809 B__

vs   Date: _August 11, 2021_

_Asthma and Allergy Foundation of America_   ☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)*<br>David A. Branch | Relationship to Lawsuit |
|---|---|
| Firm Name:<br>Law Office of David A. Branch & Associates, PLLC | ☒ Attorney for Plaintiff |
| Telephone No.:   Six digit Unified Bar No.:<br>(202) 785-2805    438764 | ☐ Self (Pro Se)<br><br>☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury      ☐ 6 Person Jury      ☒ 12 Person Jury

Demand: $_____      Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____   Judge: _____   Calendar #:_____

Case No.:_____   Judge: _____   Calendar#:_____

---

**NATURE OF SUIT:** *(Check One Box Only)*

## A. CONTRACTS                        COLLECTION CASES

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☒ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
   Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
   Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
   Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
   Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
   Under $25,000 Consent Denied

## B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

## C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
   Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
   Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE      IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

_____ August 11, 2021 _____
Date

CV-496/ June 2015



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

CHRISTOPHER GENSCH
   Vs.                               C.A. No.    2021 CA 002809 B
ASTHMA AND ALLERGY FOUNDATION OF AMERICA

## INITIAL ORDER AND ADDENDUM

### Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

(1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

(3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

(4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

(5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

**Chief Judge Anita M. Josey-Herring**

Case Assigned to: Judge FERN FLANAGAN SADDLER
Date:     August 12, 2021
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

9:30 am, Friday, November 12, 2021
Location:  Courtroom 100
          500 Indiana Avenue N.W.
          WASHINGTON, DC 20001

                      CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides, "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

**Civil Remote Hearing Instructions for Participants**

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option1:** (AUDIO ONLY/Dial-in by Phone):

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

- *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise.  If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the **Audio Alternative**

**Option 2:** (LAPTOP/ DESKTOP USERS 1):

Open Web Browser in Google Chrome and copy and paste following address from the next page:
https://dccourts.webex.com/meet/XXXXXXXXX

**Option 3:** (LAPTOP/ DESKTOP USERS 2):

Open Web Browser in Google Chrome and copy and paste following address
https://dccourts.webex.com   Select **Join**, enter the Meeting ID from the next page

**AUDIO ALTERNATIVE**:  Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window.  Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.



**Option 4:** (Ipad/SMART PHONE/TABLET):

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option #2**

CAIO-60

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).** After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom. Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | WebEx Direct URL | WebEx Meeting ID |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

CAIO-60

| 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|------|------|------|------|
| 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |

CAIO-60